**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| BONNIE GALBRETH, | No. CV 03-9529-CW |
| Plaintiff, | DECISION AND ORDER |
| v. | |
| JO ANNE B. BARNHART, Social Security Commissioner, | |
| Defendant. | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge. Plaintiff seeks review of the Commissioner's denial of disability benefits. As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for further proceedings.

**I. PROCEEDINGS IN THIS COURT**

Plaintiff's complaint was lodged December 29, 2003, and filed January 7, 2004. On May 24, 2005, defendant answered and filed plaintiff's Administrative Record ("AR"). On September 22, 2004, the parties filed a Joint Stipulation ("JS") identifying matters not in dispute, disputed issues, the parties' positions, and the relief

1

sought by each party.  This matter has been taken under submission without oral argument.

## II. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits and supplemental security income claiming disability since June 23, 1990. [JS at 1.]  An administrative hearing was held on September 29, 1997, before Administrative Law Judge ("ALJ") Anne B. Torkington. [Transcript, AR at 38-55.]  Plaintiff appeared with counsel, and testimony was taken from plaintiff and a vocational expert. [Id.] The ALJ denied benefits on December 5, 1997.  [Decision, AR at 20-37.] When the Appeals Council denied review on November 7, 2003, the ALJ's decision became the Commissioner's final decision.  [AR at 6.]

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits.  See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence

which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## IV. EVALUATION OF DISABILITY CLAIMS

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

**A. THE FIVE-STEP EVALUATION**

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107

S. Ct. 2287, 96 L. Ed. 2d 119 (1987); <u>Tackett</u>, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. <u>Tackett</u>, 180 F.3d 1098; 20 C.F.R. § 404.1520.

To "meet" a listing at step three, a claimant must meet each characteristic of a listed impairment; to "equal" a listing a claimant must show symptoms, signs, and laboratory findings at least equal in severity and duration to characteristics of a relevant listing, <u>i.e.</u>, of the listed impairment "most like" the claimant's impairment. <u>Tackett</u>, 180 F.3d at 1099; 20 C.F.R. § 404.1526. If a claimant has multiple impairments, no one of which meets or equals a listing, the collective symptoms, signs, and laboratory findings of all impairments should be evaluated to determine whether, collectively, they meet or equal any listing. <u>Tackett</u>, 180 F.3d at 1099; 20 C.F.R. § 404.1526.

Steps four and five involve residual functional capacity ("RFC"), <u>i.e</u>., what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993); <u>Cooper</u>, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c).

A claimant has the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist in fully developing the record even if a claimant is represented by counsel. <u>Tackett</u>, 180 F.3d at 1098 and n.3; <u>Smolen</u>, 80 F.3d at 1288. If a claimant's burden is met, a <u>prima facie</u> case of disability is

made, and the burden shifts to the Commissioner (at step five) to prove that, considering RFC, age, education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

To meet this burden at step five, an ALJ may use the "Grids," i.e., the Medical-Vocational Guidelines at 20 C.F.R., Part 404, Subpart P, Appendix 2. Osenbrock, 240 F.3d at 1162; Tackett, 180 F.3d at 1100-1101. An ALJ may rely on the Grids to find a claimant "disabled" (on exertional limitations and vocational factors alone), even if the claimant has both exertional and nonexertional limitations. Cooper, 880 F.2d at 1155-1156; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); "Grids" § 200.00(e)(2). An ALJ may not rely on the Grids alone to find a claimant "not disabled" unless the Grids completely and accurately represent the claimant's limitations and the claimant can perform the full range of jobs in a given category (e.g., sedentary, light, or medium work). Aukland, 257 F.3d at 1035; Tackett, 180 F.3d at 1101. Because the Grids address only exertional limitations, significant nonexertional limitations may preclude relying on the Grids alone to deny benefits at step five. Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001); Tackett, 180 F.3d at 1103, Reddick, 157 F.3d at 729.

When the Grids alone do not suffice for a step five decision, an ALJ may use the Grids as a "framework," but may also be required to use evidence from a vocational expert ("VE"). Thomas v. Barnhart, 278 F.3d 947, 960 (9th Cir. 2002); Moore v. Apfel, 216 F.3d 846, 870 (9th Cir. 2000); see also 20 C.F.R. §§ 404.1569 and 416.969. If an ALJ relies on VE testimony to deny benefits, the VE must identify a

specific job or jobs in the national economy with requirements that a claimant's physical and mental abilities and vocational qualifications would satisfy.  Osenbrock, 240 F.3d at 1162-1163.

**B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found (step one) that plaintiff had not had substantial gainful employment since June 23, 1990; (step two) that plaintiff had "severe" impairments (namely, a mild joint compartment narrowing in the right knee, a mild tilt of the lumbosacral, a depressive disorder, and borderline intellectual functioning); and (step three) that those impairments, although severe in combination, did not meet or equal a listed impairment.  [AR at 32.]  The ALJ determined that plaintiff was not fully credible on the extent of her limitations, and that she had a residual functional capacity for light work, with specific nonexertional limitations.  [Id.]  The ALJ found (step four) that plaintiff could not perform her past work as a cook's helper.  [Id.]  At step five, the ALJ noted that, although Rule 202.16 of the Grids indicated "not disabled," plaintiff's nonexertional limitations ruled out reliance on the Grids alone.  Finally, the ALJ relied on the VE's evidence that plaintiff could do the job of a housekeeping cleaner, concluded that she was not disabled, and denied benefits.  [AR at 31, 33.]

## V.   ISSUES IN DISPUTE

The Joint Stipulation identifies four disputed issues as follows:

    1.   Whether the ALJ properly considered the evidence that Bonnie Galbreth meets Listing 12.05.

    2.   Whether the ALJ properly considered her or the state agency physician's finding of impairment.

    3.   Whether the ALJ properly considered the finding of borderline intellectual functioning in determining the ability of Bonnie Galbreth to engage in mental requirements

of work activity.

    4. Whether the ALJ properly accepted the testimony of the vocational expert where such identified work requires working under specific instructions in [that?] the ALJ found an inability to tolerate more than limited contact with other people.

[JS at 4.][1]

**A.   ISSUE ONE: LISTING 12.05**

Plaintiff contends that the ALJ did not properly evaluate the evidence that plaintiff's limited intellectual functioning met Listing 12.05 (Mental Retardation and Autism). A claimant may meet Listing 12.05 by satisfying the requirements under any one of four subsections (A)-(D). Plaintiff asserts that she met Listing 12.05 under either (B) or (C). To meet Listing 12.05(B) a claimant must have a valid verbal, performance, or full scale I.Q. score of 59 or less; to meet 12.05(C) a claimant must have a valid verbal, performance, or full scale I.Q. score of 60-70, and have another impairment (physical or mental) imposing additional and significant work-related limitations.

As noted above, the ALJ found that plaintiff had other impairments, both physical and mental, which imposed additional work-related limitations. The record shows that plaintiff had I.Q. scores below 59 on at least two occasions, in 1963 and in 1995. Exhibit 51 indicates that plaintiff was placed in special education programs from third grade through twelfth grade. [AR at 281-83.] In 1963, when plaintiff was thirteen and in seventh grade, she scored a verbal I.Q. of 65, a performance I.Q. of 58, and a full scale I.Q. of 58. [AR at 283.] There is nothing in the record to suggest that the 1963 test was not valid. On the other hand, there is nothing in the record to

---

[1] The court finds the statement of disputed issues not fully clear. See below for the court's understanding of each issue.

explain how I.Q. scores at age thirteen correlate to adult scores.

Exhibit 52 is the report of a psychological evaluation of plaintiff by C. Valette, Ph.D., in 1995, when plaintiff was forty-five. [AR at 284-88.] Dr. Valette administered an I.Q. test, on which plaintiff scored a verbal I.Q. of 54, a performance I.Q. of 57, and a full scale I.Q. of 49. [AR at 287.] Dr. Valette stated that plaintiff did not appear to be making her best effort, and that the I.Q. scores were not consistent with Dr. Valette's observations of plaintiff. [AR at 284-87.] Dr. Valette opined that plaintiff's actual level of intellectual functioning was "in the borderline range," but did not give plaintiff any further tests and did not offer an opinion as to what plaintiff's I.Q. scores should have been. [AR at 287.][2] Although Dr. Valette knew that plaintiff had been placed in special education because "she was a slow learner," there is nothing in the record suggesting the Dr. Valette examined Exhibit 51, or knew of plaintiff's 1963 I.Q. scores. Accordingly, it is not clear to this court whether Dr. Valette would have evaluated plaintiff's 1995 scores any differently if she had known of the 1963 scores.

In her decision, the ALJ cited Exhibit 51 as evidence that plaintiff was able to complete high school through a special education program, but did not refer either to the 1963 I.Q. scores included in Exhibit 51 or to the 1995 scores in Exhibit 52. In her step two determination, the ALJ relied on Exhibit 52 (Dr. Valette's evaluation) as evidence for finding that plaintiff's severe impairments included "borderline intellectual functioning," but did not discuss Exhibit 52

---

[2] Defendant, citing one authority, states that "borderline intellectual functioning" equates to an I.Q. score of 71 to 84. [JS at 10-11.] Plaintiff, citing other authority, states that the "borderline" means a range of 70 to 79. [JS at 21.]

8

in any detail.  [AR at 23.]  In her step three determination, that plaintiff's impairments did not meet or equal a listing, the ALJ simply stated as follows:

> No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment.

[AR at 24.]

This conclusion in the ALJ's Decision is not supported by substantial evidence because it is not accurate to state that the record contains no evidence for an impairment meeting or equaling a listing.  On the contrary, as noted above, Exhibits 51 and 52 both "mention" findings, namely I.Q. scores, equivalent to criteria for Listing 12.05.  Furthermore, Exhibit 52 contains Dr. Valette's opinion that plaintiff's intellectual impairment, although severe, was not of listing level.  In coming to this opinion, Dr. Valette certainly "mentioned findings," namely the 1995 I.Q. scores, and stated her reasons for rejecting their validity.  Dr. Valette's failure to mention the 1963 I.Q. scores was significant, and cast some doubt on the reliability of her opinion with respect to the 1995 scores.

In her step three determination, the ALJ did not discuss any of this evidence, but instead, erroneously, stated that it did not exist. Accordingly, the ALJ's determination at step three was not based on substantial evidence, and should be reversed.  The next question is whether this case should be remanded for payment of benefits or for further proceedings.

The decision whether to remand for further proceedings is within the discretion of the district court.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-1178 (9th Cir. 2000).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it

is appropriate to exercise this discretion to direct an immediate award of benefits. <u>Harman</u>, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility). However, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. <u>Id</u>.

Although, despite the ALJ's erroneous statement to the contrary, the record contains evidence relevant to a step three determination, this court cannot assess the significance of that evidence or decide what the step three determination should have been. This court has no way to tell whether the 1963 scores, in themselves, are decisive evidence for finding that plaintiff met a listing, or whether Dr. Valette would or should have modified her opinion on the 1995 scores if she had known of the 1963 scores. In the Joint Stipulation, both parties speculate about the significance of the 1963 scores and the validity of Dr. Valette's criteria for rejecting the 1995 scores, but neither party cites any authoritative medical opinion on which to decide these questions. Accordingly, based on disputed issue one, this case should be remanded for further proceedings.

**B.   THE OTHER DISPUTED ISSUES**

None of the other issues in dispute provide grounds for ordering an immediate award of benefits. On the other hand, certain legitimate concerns raised under issues two through four should be addressed on remand if issue one is not ultimately dispositive with respect to the question of plaintiff's disability.

For example, in issue three, plaintiff contends that, even assuming, <u>arguendo</u>, that Dr. Valette's opinion of borderline

10

intellectual functioning was correct, it is not clear whether a person with a "borderline" I.Q. could meet the criteria for the job of housekeeping cleaner identified by the VE at plaintiff's hearing. It is evident that the ALJ did not ask the VE this question; it is not evident to this court what the VE would or should have answered had the question been put, or, indeed, whether a VE would have been the proper expert to put the question to. Accordingly, if, on remand, further proceedings at step three are not dispositive, defendant must more accurately and precisely assess plaintiff's intellectual impairment, and determine, at step five, what impact that would have on the ability to perform the work of a housekeeping cleaner.

In reviewing issue four, the court does not find plaintiff's argument persuasive. Plaintiff's counsel notes that the job of housekeeping cleaner, identified at plaintiff's hearing, is generally defined as requiring the ability to work under specific instructions, and further notes that the ALJ found that plaintiff had the capacity for only limited contact with other people. Counsel argues that instructions must be either written or oral, that plaintiff is virtually illiterate, and that the ALJ should have asked the VE whether a claimant restricted to only limited contact with other people could perform this job if she had to be instructed orally. Counsel does not establish either (1) that plaintiff would actually be unable to read the type of instructions involved, or (2) that the type of instructions involved, if given orally, would amount to more than limited contact with other people. However, as with issue three, it is not clear to this court what the VE would or should have replied if questioned as plaintiff suggests. If necessary, this issue should also be considered on remand.

  Finally, the court does not fully understand disputed issue two. This issue concerns discrepancies between (1) the assessment by the state agency psychiatrist finding "borderline intelligence" as the only mental impairment (and finding several functional limitations at a moderate level) [AR at 218 *et seq.*], and (2) the assessment by the ALJ, in the psychiatric review technique form ("PRTF") attached to her Decision, finding both "borderline intellectual functioning" and "depressive disorder" as mental impairments (and finding slight limitations where the agency psychiatrist had found moderate ones, but also finding other limitations to a greater extent). [AR at 34 *et seq.*] Defendant's counsel points out that the PRTF is not an assessment of residual functional capacity; instead, it includes an indication that an RFC assessment is required in plaintiff's case, and that assessment is given in the body of the Decision. Given that the ALJ found more impairments, and limitations generally more extensive, than the agency psychiatrist did, plaintiff's exact argument on this issue is not fully clear to the court. However, as with issues three and four, plaintiff has not shown, under issue two, any basis for ordering an immediate award of benefits; and any disputes with respect to the correct assessment of plaintiff's RFC may be addressed on remand if necessary.

  **C. INSTRUCTIONS ON REMAND**

  On remand, defendant shall first determine, with appropriate assistance of medical experts, whether plaintiff's intellectual impairment meets or equals Listing 12.05. If so, defendant shall award benefits; if not, defendant shall, as precisely as possible, assess plaintiff's RFC, and determine whether she could satisfy the requirements of the job of housekeeping cleaner in light of the issues

discussed above.

The court notes that plaintiff's administrative hearing was held in 1997, and that this case has been subject to repeated delays. Accordingly, the court directs that, on remand, this matter be processed as expeditiously as possible.

## VI.  ORDERS

As discussed above, **IT IS ORDERED** as follows:

1. The decision of the Commissioner is **REVERSED.**

2. This action is **REMANDED** to defendant, under Sentence Four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

3. The clerk shall serve this Decision and Order and the Judgment in this case on all parties or counsel.


DATED:   October 26, 2005

/s/_____
         CARLA M. WOEHRLE
     United States Magistrate Judge

13